IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RIO REAL ESTATE INVESTMENT
OPPORTUNITIES, LLC, a New Mexico
limited liability company,

    Plaintiff,

vs.                                    Case Number: 1:12-cv-00758-JAP-ACT

TESLA MOTORS, INC., a Delaware
corporation,

    Defendant.

## DEFENDANT TESLA MOTIORS, INC.'S MOTION FOR PARTIAL DISMISSAL

Plaintiff seeks damages for breach of contract, negligent misrepresentation, fraud and breach of the covenant of good faith and fair dealing. But the majority of Plaintiff's complaint lacks merit and should be dismissed. First, the document on which Plaintiff relies for its breach of contract claim is not an enforceable contract. As a result, Plaintiff lacks a viable claim for both breach of contract and breach of the covenant of good faith and fair dealing based on this agreement. Second, Plaintiff's meager allegations as to Tesla Motor's supposed "fraudulent acts" are deficient on their face and fail to satisfy the stringent pleading requirements demanded for asserting these claims. Based on Plaintiff's failure properly to plead its asserted claims for relief, this Court should dismiss with prejudice Counts I (breach of contract), III (fraud) and IV (breach of covenant of good faith and fair dealing) of Plaintiff's complaint.

## PROCEDURAL BACKGROUND

### Nature of Case

Plaintiff is a real estate developer in Bernalillo County. On May 24, 2012, Plaintiff filed suit in New Mexico state court. In its "Complaint for Damages for Breach of Contract,

Negligent Misrepresentation, Fraud and Breach of Covenant of Good Faith and Fair Dealing," Plaintiff alleged that it entered into a Development Agreement with Defendant Tesla Motors in February 2007. Under the terms of this Agreement, "Plaintiff was to construct a 150,000 square foot facility [for Tesla's use in] manufacturing electronic vehicles." [Doc. 1-1 ¶ 8]. Plaintiff alleges that it "began taking the actions necessary to complete its obligations under the Development Agreement." [Doc. 1-1 ¶ 12]. However, "[n]otwithstanding Plaintiff's efforts, Defendant breached the Development Agreement, refused to enter into a lease and otherwise abandoned the Project."[1] [Doc. 1-1 ¶ 15].

On July 12, 2012, Tesla removed this case to federal court. [Doc. 1]. Plaintiff did not oppose removal and did not file a motion to remand to state court.

**Plaintiff's Allegations of Breach of Contract**

Plaintiff attached a "Development Agreement" with Tesla as Exhibit A to its complaint. [Doc. 1-1 ¶ 7]. Plaintiff contends that this agreement "is a binding and enforceable contract". [Doc. 1-1 ¶ 19]. Plaintiff further maintains that it "undertook the performance of its obligations" under this agreement, and that by "abandon[ing] the development of the Project," Tesla "breached its obligation to enter into a lease agreement . . . and otherwise breached the Development Agreement." [Doc. 1-1 ¶ 20].

**Plaintiff's Allegations of Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiff claims that Tesla "has an implied duty of good faith and fair dealing to Plaintiff under the Development Agreement." [Doc. 1-1 ¶ 37]. Because Tesla allegedly "acted in bad faith by purposely failing to enter into the Lease, failing to complete the Project, and abandoning the project", Plaintiff contends that Tesla breached this implied duty. [Doc. 1-1 ¶¶ 38-39].

---

[1] Plaintiff defines "The Project" as Plaintiff's "construct[ion] of the 150,000 square foot facility for the use of manufacturing electronic vehicles". [Doc. 1-1 ¶ 8].

**Plaintiff's Allegations of Fraud**

Count III of Plaintiff's complaint is for fraud. [Doc. 1-1 ¶¶ 31-35]. Plaintiff's only substantive allegation is that "[t]he actions of Defendant in intentionally concealing their [*sic*] intent to abandon the Project after over a year of perpetual preparation constitutes fraud." [Doc. 1-1 ¶ 32]. The remainder of the claims in this count relate to Defendant's alleged state of mind and the damages Plaintiff supposedly suffered. [Doc. 1-1 ¶¶ 33-35].

## NOTICE PLEADING STANDARD

Federal Rule of Civil Procedure 8 provides that a federal court complaint need contain only a "short and plain" statement of "the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). But even under this liberal standard, there must be enough factual allegations contained in the complaint to provide fair notice of the nature of the claim against the defendant. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008). A complaint must contain either direct or inferential allegations respecting all the material elements necessary to recover on a cause of action. See Bryson v. Gonzales, 534 F.3d 1282, 1286 (10th Cir. 2008).

## STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The sufficiency of a complaint is a question of law, and when considering and addressing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006).

A complaint challenged by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but to satisfy the plaintiff's burden of showing that it is entitled to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 546 (2007).  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (a plaintiff's complaint must set forth more than a threadbare recital "of the elements of a cause of action, supported by mere conclusory statements"). "Factual allegations must be enough to raise a right to relief above the speculative level". Twombly, 550 U.S. at 545 (citation omitted). The plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. Id. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678.  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).  If the allegations in the complaint are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff has not met the plausibility standard. Robbins, 519 F.3d at 1247.

### PERTINENT NEW MEXICO LAW GOVERNING THE EXISTENCE OF AN ENFORCEABLE CONTRACT

A contract is a promise that the law will enforce.  Nance v. L.J. Dolloff Associates, Inc., 2006-NMCA-012, ¶ 19, 138 N.M. 851, 126 P.3d 1215; see 1 E. Allan Farnsworth, Farnsworth on Contracts § 1.1 (2d ed. 1998).  The New Mexico Supreme Court has noted that "[a]lthough a written contract need not detail every term, essential terms must be expressly provided or

4

necessarily implied by construction for a court to find the contract unambiguous on its face." Randles v Hanson, 2011-NMCA-059, ¶ 32, 150 N.M. 362, 258 P.3d 1154 (quoting McNeill v. Rice Eng'g & Operating, Inc., 2003-NMCA-078, ¶ 27, 133 N.M. 804, 70 P.3d 794).  For this reason, "[v]agueness of expression, indefiniteness, and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract." Hyder v. Brenton, 93 N.M. 378, 384, 600 P.2d 830, 836 (Walters, J., dissenting in part, concurring in part) (quoting 1 A. Corbin, Corbin on Contracts § 95 (1963)).

An offer – meaning an indication of interest to enter into a contract – is an essential element of a legally enforceable contract.  DeArmond v. Halliburton Energy Servs., Inc., 2003-NMCA-148, ¶ 9, 134 N.M. 630, 81 P.3d 573; see Talbott v. Roswell Hospital Corp., 2005-NMCA-109, ¶ 15, 138 N.M. 189, 118 P.3d 194 ("An offer is a communication of a willingness to enter into a contract.").  But not all proposals constitute offers, particularly when the offering party intends to make a further bargain in the future.  Instead, as set forth in the Restatement (Second) of Contracts § 26:

> A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of intent.

See also State v. Bankert, 117 N.M. 614, 620, 875 P.2d 370, 376 (1994) ("In a commercial transaction, during preliminary negotiations, there can be no conclusive bargain.").

**RELEVANT NEW MEXICO LAW REGARDING THE
IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

"Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." Salas v. Mountain States Mut. Cas. Co., 2009-NMSC-005, ¶ 13, 145 N.M. 542, 202 P.3d 801 (internal quotation marks and citation omitted).

"Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." Watson Truck & Supply Co. v. Males, 111 N.M. 57, 60, 801 P.2d 639, 642 (1990) (internal quotation marks and citation omitted). The Supreme Court of New Mexico, however, has expressed reluctance to use the covenant of good faith and fair dealing "under circumstances where . . . it may be argued that from the covenant there is to be implied in fact a term or condition necessary to effect the purpose of a contract." Id.

### RELEVANT LAW REGARDING PLEADING ALLEGATIONS OF FRAUD

As shown above, a plaintiff normally need plead only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Fraud claims, however, must meet more stringent standards. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). See Two Old Hippies, LLC v. Catch the Bus, LLC, 784 F. Supp. 2d 1200, 1207 (D.N.M. 2011) ("[A] court should require parties to plead a cause of action with particularity when that cause of action contains allegations grounded in fraud.") (citing 2 J. Moore, J. Parness & J. Smith, Moore's Federal Practice § 9.03(1)(d) (3d ed. 2008)). "To survive a motion to dismiss, an allegation of fraud must 'set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" Midgley v. Rayrock Mines, Inc., 374 F. Supp. 2d 1039, 1047 (D.N.M. 2005) (quoting Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997)).

The heightened pleading requirement demanded for allegations of fraud protects a defendant's reputation from the harm attendant to accusations of fraud or dishonest conduct. See United States ex rel. Harrison v. Westinghouse Savannah River Co., 353 F.3d 908, 921 (4th Cir. 2003) ("Rule 9(b) protects defendants from harm to their goodwill and reputation." (internal

quotation marks omitted)); Guidry v. Banks of LaPlace, 954 F.2d 278, 288 (5th Cir. 1992) ("[The particularity requirement] stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to a defendant's reputation."). The specificity requirement also puts defendants on notice of the allegedly fraudulent conduct so that they can formulate a defense. See Westinghouse Savannah River Co., 353 F.3d at 921. And the need to set out the elements of alleged fraud more carefully prevents plaintiffs from tacking on specious fraud claims to their pleadings in an attempt "to induce advantageous settlements or for other ulterior purposes." Banker's Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir. 1992).

### I. PLAINTIFF FAILED PROPERLY TO PLEAD A CLAIM FOR BREACH OF CONTRACT

For a contract to be enforceable "there must be an objective manifestation of mutual assent by the parties to the material terms of the contract". Pope v. The Gap, Inc., 1998-NMCA-103, ¶ 11, 125 N.M. 376, 961 P.2d 1283. Even a cursory reading of the Development Agreement on which Plaintiff purports to rely for its breach of contract claim makes clear that the parties never set forth – let alone agreed to – the essential elements of the deal. Rather than spell out the critical terms of the Project, the Development Agreement instead merely "establishes a relationship between Tesla and [Plaintiff]." [Doc. 1-1, Ex. A at 1].

The Development Agreement explicitly states that the parties never intended that it alone would govern the course of conduct between them. To the contrary:

> The parties contemplate that successor agreements will be drafted between [Plaintiff] and Tesla that reflect the following terms and effect the relationship contemplated herein. However, the parties agree that unless and until such agreement is signed, this Agreement represents the spirit of the overall agreement and a good faith commitment by the parties to perform the obligations described herein.

[Doc. 1-1, Ex. A at 1]. At most, the Development Agreement represents only an "agreement to

agree" to terms and conditions that were to be negotiated and finalized sometime time in the indefinite future, and not a binding contract. In that sense, the Development Agreement reflected only the parties' preliminary inclinations, and served merely as a "nonbinding expression in contemplation of a future contract, as opposed to its being a binding contract." Rennick v. O.P.T.I.O.N. Care, Inc., 77 F.3d 309, 315 (9th Cir. 1996). See also A/S Apothekernes Labs. v. I.M.C. Chemical Group, Inc., 873 F.2d 155, 158 (7th Cir. 1989) ("[T]he purpose and function of a preliminary letter of intent is not to bind the parties to their ultimate contractual objective. Instead, it is only to provide the initial framework from which the parties might later negotiate a final agreement if the deal works out.")

The vague nature of the matters set forth in the Development Agreement is amplified by the number of contingencies, additional tasks to be performed by other parties, and unresolved negotiations that had to be concluded before the Project could move forward. These include the following:

- ➤ "[Plaintiff] will finalize an agreement with SunCal to convey, at no charge to Tesla, up to 75 acres of land which abuts the proposed site in Cordero Mesa. The conveyance of this land is contingent upon a decision by Tesla to make a significant expansion onto the site. . . . The intention of the parties is that various public entities and [Plaintiff] will pay for and provide utilities and infrastructure to the site at no cost to Tesla. It must be noted, however, that the parties of this date have no authority to obligate future local and state governments to any future commitments and expense." [Doc. 1-1, Ex. A at 1-2].

- ➤ "[Plaintiff] has agreed to provide a signing bonus to Tesla in the amount of $8,700,000. Payment of the signing bonus will be conditional upon Tesla meeting certain financial requirements to be agreed upon by the parties and described below, and conditional upon Bernalillo County's successful negotiation and implementation of a project participation agreement. . . ." [Doc. 1-1, Ex. A at 2].

- ➤ "As a contribution to the signing bonus described in the foregoing paragraph, the State will provide to Bernalillo County, pending appropriation by the New Mexico State Legislature, capital outlay totaling $7 million." [Doc. 1-1, Ex. A at 2].

➤ "Bernalillo County will . . . provide a direct grant to [Plaintiff] . . . . This grant shall be subject to the terms and conditions and state and local laws . . . including the passage of [the required] ordinance, development of an economic development plan, and approval by Bernalillo County of an economic development project application that must be submitted to Bernalillo County by Developer." [Doc. 1-1, Ex. A at 2-3].

➤ "Bernalillo County and [Plaintiff] will then enter into a project participation agreement that shall set out, at a minimum:
   1. the contribution to be made by each party to the participation agreement;
   2. the security provided by Bernalillo County and any performance guarantees;
   3. a schedule for project development and completion, including measurable goals and time limits for those goals;
   4. provisions for performance review and actions to be taken upon a determination that project performance is unsatisfactory."

[Doc. 1-1, Ex. A at 3].

➤ "The foregoing signing bonus from [Plaintiff] is contingent, and the associated contribution from the State, is contingent upon sufficient funding in the development process by the City of Albuquerque, the County of Bernalillo and state governments. The contribution will be further described in agreements between the applicable parties. . . ." [Doc. 1-1, Ex. A at 3].

➤ "[Plaintiff] will provide to Tesla a written statement from the City, County or State that the proposed uses by Tesla of the Facility have been approved and are consistent with any applicable development plan, zoning, or any other restrictions on use." [Doc. 1-1, Ex. A at 3].

Plaintiff nowhere asserts that any of these contingencies were satisfied such that the Project could proceed.

Although Plaintiff claims that it "undertook the performance of its obligations under the Development Agreement," [Doc. 1-1 ¶ 20], Plaintiff nowhere alleges that any of the conditions or necessary actions to be completed by any of the other entities, agencies or governments were undertaken, let alone completed. This omission removes the foundation for Plaintiff's breach of contract action. The clear language of the Development Agreement makes it clear that the

9

parties were far from reaching a final agreement.  To the contrary, the parties understood that further negotiations, documentation and government action remained to be completed.  Until such matters were accomplished, the Project could not proceed.  The parties may have shared a mutual goal to work towards building the contemplated facility, but "not every expression of intention . . . can properly be called a promise."  1 A. Corbin, Corbin on Contracts § 1.15 (rev. ed. 1993).

The essential terms of the Development Agreement simply are not present, and Plaintiff cannot hope that discovery and circumstantial evidence will fill in the myriad of missing pieces.  See generally 10 Samuel Williston, A Treatise on the Law of Contracts § 29.8, at 473, 480 (Richard A. Lord, ed., 4th ed. 1999) (a memorandum that does not contain all essential terms "cannot be eked out by parol evidence").  Plaintiff's meager allegations to support its claim for breach of contract are insufficient on their face, and the Court should dismiss with prejudice Count I (breach of contract) of Plaintiff's complaint.

**II.   WITHOUT A CLAIM FOR BREACH OF CONTRACT, PLAINTIFF HAS NO CAUSE OF ACTION FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEADLING**

Under New Mexico law, a cause of action for breach of the covenant of good faith and fair dealing sounds in contract.  Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 439, 872 P.2d 852, 857 (1994).  In the absence of an enforceable contract, however – as is the case here – no such implied covenant exists.  Thus, dismissal of Plaintiff's claim for breach of contract mandates dismissal of the claim for an implied covenant arising from that non-existent agreement.

Tort recovery for breach of the covenant of good faith and fair dealing is permissible, but only where a special relationship existed, such as between insurer and insured.  See id.

Conversely, if no "special relationship" exists, then "[t]he claim for breach of good faith and fair dealing sounds in contract". Heimann v. Kinder-Morgan CO2 Co., 2006-NMCA-127, ¶ 18, 140 N.M. 552, 144 P.3d 111. In the present case, Plaintiff alleged no facts to show the existence of the requisite special relationship that would permit it to recover for breach of the covenant of good faith and fair dealing in anything other than contract. To the contrary, Plaintiff relies solely on the validity of the Development Agreement to justify its claim for breach of the implied covenant. [Doc. 1-1 ¶ 37]. Given the Development Agreement does not constitute an enforceable agreement, this Court should dismiss with prejudice Count IV (breach of covenant of good faith and fair dealing) of Plaintiff's complaint.

### III. COUNT III OF PLAINTIFF'S COMPLAINT FOR FRAUD SHOULD BE DISMISSED UNDER RULE 9(b)

Count III of Plaintiff's complaint fails to comply with Rule 9(b)'s particularity requirements. Specifically, the complaint:

- fails to specify the "who, what, when, where and how" of *any* of the allegations;
- fails to identify Tesla's specific, post-contract, alleged wrongdoing; and
- fails to identify a single fraudulent act or statement made to Plaintiff.

Plaintiff utterly fails to present a legally cogent set of allegations to support a claim for fraud, and as a result, the Court should dismiss with prejudice Count III of Plaintiff's complaint.

#### A. Plaintiff Failed to Specify the Essential Circumstances Surrounding the Alleged Fraudulent Statements

Even the most generous reading of Plaintiff's Complaint reveals that Count III improperly asserts a claim for fraud. Plaintiff never states who said the alleged fraudulent statements, what those fraudulent statements were, when they were made or where they supposedly took place. See Two Old Hippies, LLC, 784 F. Supp. 2d at 1208 (Rule 9(b) requires a plaintiff to allege the "who, what, when, where and how of the alleged fraud."). Indeed,

11

Plaintiff never even avers any specific statement or omission alleged to be false. United States ex rel. Downy v. Corning, Inc., 118 F. Supp. 2d 1160, 1173 (D.N.M. 2000) (at least some specific examples of the alleged fraud must be provided in complaint).

Vague and conclusory allegations of fraud like those in paragraph 33 of the complaint – "[t]he actions of Defendant in intentionally concealing their intent to abandon the Project after over a year of perpetual preparation constitutes fraud." – cannot salvage Plaintiff's claim. See Solow v. Stone, 994 F. Supp. 173, 182 (S.D.N.Y. 1998) (Rule 9(b)'s heightened pleading requirement applies to allegations of fraudulent concealment, and plaintiff's mere assertion that defendants "fraudulently concealed their actions" did not satisfy standard). To the contrary, such allegations fail to state even a non-fraud-based claim, and certainly do not meet Rule 9(b)'s more stringent particularity requirements. See Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1099 (10th Cir. 2003) ("Generalized or conclusory allegations of fraud [are] not … sufficient.").

Plaintiff's complaint is further deficient because it fails to identify the specific representatives of the corporate defendant who purportedly engaged in the alleged fraudulent conduct. Where (as here) a corporate entity is named as the sole defendant in a fraud claim, the plaintiff must identify the individual employees who participated in the alleged wrongdoing; if not, the complaint must be dismissed. See, e.g., United States ex rel. Lee v. SmithKline Beecham, Inc., 245 F.3d 1048, 1051-52 (9th Cir. 2001) (False Claim Act claim failed to satisfy Rule 9(b) where *qui tam* plaintiff failed to identify employees involved in the fraud); United States ex rel. Robinson v. Northrop Corp., 149 F.R.D. 142, 145 (N.D. Ill. 1993) ("[T]he identity and/or role of the individual employee involved in the alleged fraud must be specified in the complaint. . . ."). Plaintiff's claims against Tesla must be dismissed for this reason as well.

## B. Plaintiff Failed to Identify the Alleged Fraudulent Conduct At Issue

Plaintiff's allegations do not sufficiently plead what conduct was fraudulent and how the conduct was fraudulent in a way that distinguishes Tesla's conduct from the alleged negligent misrepresentations (alleged in Count II) or breach of contract (as alleged in Count I). As one noted commentator has stated in the context of "cases concerning fraudulent misrepresentation and omission of facts," in order to satisfy Rule 9(b), a plaintiff must plead "the type of facts omitted, where the omitted facts should have been stated, and the way in which the omitted facts made the representations misleading." 2 Moore's Federal Practice § 9.03[1][b], at 9-18 (3d ed. 2011).

A plaintiff's pleading obligations in cases asserting fraud based on a theory of failure to disclose – as seems to be the case here (see [Doc. 1-1 ¶ 33]) – require a plaintiff to "allege . . . facts that, if true, would give rise to a duty of disclosure." Carroll v. Fort James Corp., 470 F.3d 1171, 1174 (5th Cir. 2006). The United States Court of Appeals for the Fifth Circuit justified this pleading requirement based on the common-law principle that "one who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so." Id. at 1174 (quoting Chiarella v. United States, 445 U.S. 222, 227-28 (1980)). The Tenth Circuit has imposed similar requirements in the Rule 9(b) context:

> [T]he sum of plaintiffs' allegations is a failure by defendants to disclose pertinent features of the transaction to plaintiffs. Absent a showing of a "fiduciary or other similar relation of trust and confidence" between defendants and plaintiffs, the failures to disclose identified in the complaint are not actionable. Plaintiffs do not allege any such relationship.

Burke v. Woods, 85 F.3d 640, 1996 WL 223731, at *5 (10th Cir. 1996) (unpublished table decision) (citations omitted).

13

Plaintiff failed to make any allegations suggesting that Tesla had a duty to disclose information to Plaintiff about its intention to complete the Project. New Mexico courts have recognized that "where one is under a duty to speak but remains silent and fails to disclose a material fact, he may be liable for fraud." R.A. Peck, Inc. v. Liberty Fed. Sav. Bank, 108 N.M. 84, 88, 766 P.2d 928, 932 (1988).  Conversely, in the absence of such a duty, a party cannot be found to have committed fraud.  McElhannon v. Ford, 2003-NMCA-091, ¶ 12, 134 N.M. 124, 73 P.3d 827 ("A party can be held liable for nondisclosure only when there is a duty to disclose."). In the present case, there are no allegations that, if true, would support a conclusion that Tesla owed any duty to Plaintiff to disclose certain information about the Project.

In short, Plaintiff failed to provide sufficient allegations fleshing out the transaction to indicate why or how Tesla acted fraudulently. Even if taken as true, Plaintiff's allegations do not articulate, as Rule 9(b) requires, that Tesla acted fraudulently.  For this reason, the Court should dismiss with prejudice Plaintiff's fraud claim (Count III).

Pursuant to D.N.M.LR-Civ. 7.1(a), Defendants' counsel conferred in good faith with Plaintiff's counsel at the Rule 16 Conference and determined that Plaintiff opposes this motion.

WHEREFORE, Defendant Tesla Motors, Inc. requests that this Court enter an Order dismissing with prejudice Plaintiff's Complaint.

        RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: *"Electronically Filed" /s/ Andrew G. Schultz* .
      Andrew G. Schultz
      Nicholas Sydow
P.O. Box 1888
Albuquerque, NM 87103
Telephone:  (505) 765-5900
Facsimile:  (505) 768-7395
E-mail:  aschultz@rodey.com
         nsydow@rodey.com

*Attorneys for Defendant Tesla Motors, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 15, 2012, the foregoing *Motion for Partial Dismissal* was electronically filed with the Clerk of Court using the CM/ECF system that will send notification of such filing to all counsel of record:

Christopher M. Pacheco
LeeAnn Werbelow
Lastrapes, Spangler & Pacheco, P.A.
P.O. Box 15698
Rio Rancho, NM 87174

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By */s/ Andrew G Schultz* .
    Andrew G. Schultz