IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RIO REAL ESTATE INVESTMENT
OPPORTUNITIES, LLC, a New Mexico
limited liability company,

    Plaintiff,

vs.                                        Case Number: 1:12-cv-00758-JAP-ACT

TESLA MOTORS, INC., a Delaware
corporation,

    Defendant.

**DEFENDANT TESLA MOTORS, INC.'S REPLY
IN SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL**

Plaintiff fails to rebut Tesla's contentions in its Motion for Partial Dismissal. In trying to defend its breach of contract claim, Plaintiff relies on outdated law regarding motions to dismiss, made obsolete by the United States Supreme Court's rulings in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal*. Plaintiff's breach of contract claim is not facially plausible, given the allegations of the complaint and the plain language of the "Development Agreement." As a result, Plaintiff's breach of contract claim should be dismissed. Furthermore, Plaintiff concedes that its claim for breach of the covenant of good faith and fair dealing depends on its breach of contract claim. Because the breach of contract claim cannot succeed, Plaintiff's claim for breach of the covenant of good faith and fair dealing also should be dismissed. Finally, after Tesla pointed out that Plaintiff utterly failed to plead its fraud claim with the specificity required by Rule 9, Plaintiff merely restated the elements of a fraud claim and quoted several paragraphs from the Complaint. These allegations are insufficient to satisfy the heightened requirements of Rule 9, and Plaintiff's fraud claim should be dismissed.

### I.   Plaintiff Erroneously Applies the pre-*Twombly*/*Iqbal* Standard for Motions to Dismiss That No Longer Is Good Law.

Plaintiff's defense that it properly pleaded a breach of contract claim relies upon a litany of cases explaining that the standard for defeating a motion to dismiss is "exceedingly low." (*See* Pltf.'s Resp. to Def.'s Mot. to Dismiss & Mem. of Points & Authorities in Support [Doc. 15] ("Response") at 6-7). These cases – one of which dates from 1938, the year the Federal Rules of Civil Procedure were implemented – predate the United States Supreme Court's decisions in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* and no longer reflect the state of federal law governing motions to dismiss. For example, it is no longer "immaterial whether a pleading states 'conclusions' or 'facts' as long as fair notice is given." (Response at 7 (citing *Rogers v. Dwight*, 145 F. Supp. 537, 538 (D.C. Wis. 1956)). To the contrary, to survive a motion to dismiss, a complaint must set forth more than a threadbare recital "of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Twombly* and *Iqbal* introduced a "refined standard" that constituted a "'middle ground between heightened fact pleading … and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action…." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Under this standard, "to overcome a motion to dismiss, a plaintiff's allegations must move from conceivable to plausible." *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1167 (10th Cir. 2010). Plaintiff's claims that it need not "state with precision every element of the offence necessary for recovery" and that it need only present a "generalized summary of the case" (Response at 7) are simply no longer the law.

Plaintiff relies upon these outmoded standards in explaining why its claim for breach of contract is sufficient. It argues that the mere assertion of the elements of a breach of contract

claim, including that an enforceable contract existed between the parties (Response at 6 (citing Compl. ¶ 18)), and that Plaintiff "otherwise satisfied its obligations under the Development Agreement" (Response at 7 (citing Compl. ¶ 14)), constitutes a viable breach of contract claim. Plaintiff is wrong. Under *Twombly* and *Iqbal*, a complaint must contain "pleaded factual content" from which the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> II. **The "Development Agreement" Is Not an Enforceable Contract on Its Face and Plaintiff Failed to Allege That All Conditions Precedent to the Agreement Occurred.**

Plaintiff's breach of contract claim fails to meet the standard set out in *Twombly* and *Iqbal* in that it does not "contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Development Agreement that Plaintiff claims is an enforceable contract between the parties is, on its face, nothing more than a statement of the parties' intent that they would work in good faith towards possibly developing a facility to manufacture Tesla's vehicles. (*See* Def. Tesla Motors, Inc.'s Mot. Partial Dismissal [Doc. 14] ("Motion") at 7-8). This sort of nonbinding expression in contemplation of a future contract, just like a letter of intent, is not an enforceable contract that can support a breach of contract claim. (*See id.* at 8).

The language that Plaintiff claims shows that the Development Agreement is a binding contract actually underscores the fact that the document was intended as only a good-faith agreement to work towards a series of binding contracts in the future. The clause Plaintiff highlights from page one of the Development Agreement states:

> The parties contemplate that successor agreements will be drafted between [Plaintiff] and Tesla that reflect the following terms and effect the relationship contemplated herein. However, the parties agree that unless and until such agreement is signed, this Agreement represents the spirit of the overall agreement

and a good faith commitment by the parties to perform the obligations described herein.

(Compl., Ex. A, at 1). For several reasons, this provision demonstrates that the parties did not intend for the Development Agreement to be a free-standing, enforceable contract.

First, this clause explicitly states that the parties contemplate that successor agreements will be signed in the future and that those agreements will "effect the relationship contemplated herein." If future agreements are necessary to effectuate the relationship that the Development Agreement envisions, then the Development Agreement cannot be a binding contract. *See Stites v. Yelverton*, 60 N.M. 190, 200, 289 P.2d 628, 635 (1955) (recognizing "the well settled rule that a contract to enter into a future contract will not be enforced unless the essential and material terms have been agreed upon."). Second, the clause explains that the Development Agreement represents only the "spirit" of an overall agreement and a "good faith commitment" by the parties. The spirit or good faith intention to enter into an "overall agreement" in the future does not constitute the mutual assent to all material terms that is necessary to establish a contract. *See Pope v. The Gap, Inc.*, 1998-NMCA-103, ¶ 11, 125 N.M. 376, 961 P.2d 1283 ("For an offer and acceptance to create a binding contract, there must be an objective manifestation of mutual assent by the parties to the material terms of the contract."). Finally, the statement that the Development Agreement "contains the principal terms with respect to the relationship between" the Parties (Response at 2 (quoting Compl., Ex. A at 1)) is not evidence that the Agreement is an enforceable contract. The Agreement reflects the terms of the parties' *relationship* rather than a contract in fact. This language shows that the parties intended for the Agreement to document the status of their efforts to work together, rather than serve as a commemoration of agreed-upon, finalized, material terms.

Plaintiff's attempt to analogize the Development Agreement to a real estate purchase agreement is unsuitable (and without citation to authority). A purchase agreement typically calls for the execution of a deed as part of the agreement's performance. The deed is not a subsequent contract or alteration of the purchase agreement's material terms. The Development Agreement at issue here is quite different; it explicitly contemplates that successor agreements will follow and effectuate the incomplete, "good faith" intentions of the parties. Because the Development Agreement is best characterized as a recording of the parties' efforts to work towards an enforceable contract, rather than an enforceable contract itself, the Development Agreement cannot support Plaintiff's breach of contract claim. *Cf. Lewis v. Pilot Corp.*, 46 Fed. Appx. 900, 901-02 (10th Cir. 2002) (contract to purchase gas station had not been formed where the parties anticipated the execution of a subsequent agreement and the purchase was contingent on several actions, including the leasing of adjoining property).

Even if the Development Agreement were a valid contract, its many contingencies and conditions precedent render it unenforceable. (*See* Motion at 8-10). Plaintiff tries to argue that these many contingencies and other uncertainties do not render the Agreement unenforceable, citing to *Republic National Life Insurance Co. v. Red Lion Homes, Inc.* (Response at 3). This case does not support Plaintiff's position. *Red Lion Homes* is a case (interpreting Colorado law) that stands for the proposition that if a contract for the sale of property is contingent upon financing, the contract contains an implied, enforceable term requiring reasonable efforts to obtain financing. 704 F.2d 484, 486 (10th Cir. 1983). The case does not address the present situation, where there are many, varied contingencies. Nor does it hold that even if contingencies or conditions precedent do not occur, the contract remains enforceable.

To the contrary, Plaintiff's own definition of a breach of contract claim includes the requirement that any conditions precedent have been performed. (Response at 5-6 (citing *McCasland v. Prather*, 92 N.M. 192, 194, 585 P.2d 336, 338 (1978))). The New Mexico Supreme Court has recognized that a requirement of governmental approvals – like those contained in the Development Agreement – can be "a condition precedent … which must be met before the contract is formed." *Dechert v. Allsup's Convenience Stores, Inc.*, 104 N.M. 748, 749, 726 P.2d 1378, 1379 (1986) (internal quotation marks omitted). For example, in *K. L. House Construction Co. v. Watson*, the New Mexico Supreme Court reversed the trial court and held that an acceptance did not exist and a contract had not been formed where one of the parties' acceptance of the contract was contingent on federal funding. 84 N.M. 783, 784-85, 508 P.2d 592, 593-94 (1973). Where required government approval has not been obtained, a party cannot be found liable for breach of contract. *See Dechert*, 104 N.M. at 750, 726 P.2d at 1380.

Plaintiff makes a half-hearted argument that all of the contingencies identified in Tesla's motion were resolved. Plaintiff "assert[s] that the contingencies which were necessary for Defendant to enter into the Lease were satisfied…." (Response at 4). But Plaintiff cannot point to allegations in its complaint that any of the many contingencies identified in the Development Agreement were ever resolved. The closest Plaintiff comes is a generalized statement that it "obtained governmental approvals, … obtained commitments for governmental funding and otherwise satisfied its obligations under the Development Agreement." (Compl. ¶ 14). Without alleging how, when, or even whether the various contingencies, additional tasks, and pending negotiations identified in the Development Agreement were completed, Plaintiff's Complaint cannot state a plausible claim for breach of contract that meets the standards set forth in *Twombly*

and *Iqbal*. Because Plaintiff's Complaint does not allege a facially plausible claim for breach of contract, the Court should dismiss this count.

Alternatively, the Court should dismiss Plaintiff's breach of contract claim on the basis of the plain language of the Development Agreement, which demonstrates that the Agreement is not a binding contract. Both the Complaint and the Development Agreement are proper subjects of examination by the Court on a motion to dismiss. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint."). Furthermore, although Plaintiff correctly notes that where the parties present conflicting facts about whether a contract was formed, the question should go to the jury (Response at 4), here, where Tesla's motion to dismiss is predicated on the plain language of the Development Agreement and the facts as alleged in Plaintiff's Complaint, the motion should be decided by the Court. *See Peck v. Title USA Ins. Corp.*, 108 N.M. 30, 33, 766 P.2d 90, 93 (1988) ("In the absence of ambiguity in a contract, the construction of a contract is a question of law."); *Rhodes v. Martinez*, 1996-NMCA-096, ¶ 4, 122 N.M. 439, 925 P.2d 1201 ("The interpretation of a written contract, where only documentary evidence is at issue, is a question of law...."), *overruled on other grounds by Cherpelis v. Cherpelis*, 1998-NMCA-079, 125 N.M. 248, 959 P.2d 973; *Garcia v. Middle Rio Grande Conservancy Dist.*, 99 N.M. 802, 664 P.2d 1000 (Ct. App. 1983) ("The existence of a contract between parties is generally a question of law to be decided by the trial court.").

### III. Plaintiff Concedes That If Its Breach of Contract Claim Fails, Its Breach of the Covenant of Good Faith and Fair Dealing Claim Also Must Fail.

The covenant of good faith and fair dealing is an implied term in all contracts; without a contract, there is no implied covenant and a claim for a breach of the covenant must fail. (*See*

Motion at 10). In its Response, Plaintiff concedes that its claim for breach of the covenant of good faith and fair dealing is dependent on its breach of contract claim. (Response at 8). And Plaintiff makes no attempt to fit within the exception that creates an extra-contractual covenant of good faith and fair dealing for parties that have a special relationship. (*See* Motion at 10-11).

Instead, Plaintiff simply recites the elements of a claim for breach of the covenant of good faith and fair dealing. (Response at 8). Then, Plaintiff argues that whether a covenant of good faith and fair dealing was breached is a question of fact. (*Id.*) This statement may be true, but there can be a breach only if the covenant existed in the first place. Given that the Development Agreement was not a binding contract, it cannot contain an implied covenant for good faith and fair dealing. Therefore, if the Court dismisses Plaintiff's breach of contract claim, it also should dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing.

**IV.  Plaintiff Fails to Allege Fraud with Specificity, Requiring Dismissal of Plaintiff's Fraud Claims under Rule 9.**

Federal Rule of Civil Procedure 9(b) establishes a heightened pleading standard for Plaintiff's fraud claim. A party alleging fraud must plead the specific statements that it claims were fraudulent, when and where such statements were made, and the person who made such statements. (Motion at 11-12). In addition, when a fraud claim is brought against a corporate defendant, the plaintiff must identify the particular employees that made fraudulent statements. (*Id.* at 12). Lastly, if a fraud claim is based on a failure to disclose information – as at least part of Plaintiff's claim appears to be – then the plaintiff must establish that the defendant had a duty to disclose the information at issue. (*Id.* at 13).

Plaintiff's fraud claim does not meet any of these pleading requirements. After Tesla detailed the requirements of Rule 9(b) in its Motion, Plaintiff simply repeated the insufficient allegations in its Complaint and pronounced that it had pleaded its fraud claim with particularity.

(Response at 9). These allegations are entirely insufficient. Plaintiff's assertion that Tesla "represented … that it would lease the Facility and operate an electronic vehicle manufacturing plant" does not identify any particular statement, who made any such statement, or when and where the statement was made. (Compl. ¶ 24). Plaintiff's allegation that Tesla "engaged in substantial meetings and planning regarding the Project" is equally as vague. (*Id.* ¶ 25). Plaintiff's final claim – that Tesla concealed its intent to abandon the project (*Id.* ¶ 32) – not only fails to contain any of the necessary, "who, what, where, when, and how" elements of a fraud claim, but also omits essential facts to show that Tesla had a duty to disclose information about its business plans to Plaintiff.

By doing nothing more than repeat the woefully inadequate allegations from its Complaint, Plaintiff cannot salvage its fraud claim. Plaintiff's indistinct assertions that someone at Tesla told someone representing Plaintiff that Tesla intended to operate a vehicle manufacturing plant and did not timely inform Plaintiff of Tesla's decision not to construct this plant fails to set forth a fraud claim under the general pleading standards of Rule 8, let alone under Rule 9's heightened standards. These more demanding pleading standards are necessary to ensure both that a defendant has fair notice of the claims against it and that its reputation is not maligned by "improvident charges of wrongdoing." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992). Given that Plaintiff failed to show how its fraud claim meets Rule 9's pleading standards, this claim should be dismissed with prejudice.

**V.     Conclusion.**

Plaintiff's Response to Tesla's Motion to Dismiss fails to refute the reasons why Plaintiff fails to state a claim for breach of contract, breach of the covenant of good faith and fair dealing, and fraud. Plaintiff has not shown that the Development Agreement can be a binding contract

given its explicit language that the parties' dealings will be effectuated by future agreements, and in light of the many contingencies set forth in the Agreement. Instead, Plaintiff mistakenly tries to rely upon pre-*Iqbal/Twombly* case law to contend that its generic assertion that an enforceable contract exists is sufficient to defeat a motion to dismiss. Plaintiff never disputed the conclusion that if its breach of contract claim fails, its breach of the covenant of good faith and fair dealing claim must fail, as well. And even after Tesla pointed out the numerous inadequacies in Plaintiff's fraud claim, Plaintiff simply reiterated those deficient allegations which do not come close to meeting the heightened pleading requirements of Rule 9.

For these reasons, Tesla respectfully requests that the Court dismiss with prejudice Counts I (breach of contract), III (fraud) and IV (breach of covenant of good faith and fair dealing) of Plaintiff's complaint.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By: *"Electronically Filed" /s/ Andrew G. Schultz* .
 Andrew G. Schultz
 Nicholas Sydow
P.O. Box 1888
Albuquerque, NM 87103
Telephone: (505) 765-5900
Facsimile: (505) 768-7395
E-mail: aschultz@rodey.com
 nsydow@rodey.com

*Attorneys for Defendant Tesla Motors, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 15, 2012, the foregoing *Reply in Support of Motion for Partial Dismissal* was electronically filed with the Clerk of Court using the CM/ECF system that will send notification of such filing to all counsel of record:

Christopher M. Pacheco
LeeAnn Werbelow
Lastrapes, Spangler & Pacheco, P.A.
P.O. Box 15698
Rio Rancho, NM  87174
cp@lsplegal.com
lw@lsplegal.com

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By    */s/ Andrew G Schultz*                              .
         Andrew G. Schultz