IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

RIO REAL ESTATE INVESTMENT
OPPORTUNITIES, LLC, a New Mexico
limited liability company,

      Plaintiff,

vs.

                                                  Civ. No. 12-758 JP/ACT

TESTLA MOTORS, INC., a Delaware
corporation,

      Defendant.

MEMORANDUM OPINION AND ORDER

This lawsuit concerns a contract dispute involving a Development Agreement between Tesla Motors, Inc., and Rio Real Estate Investment Opportunities, LLC (Development Agreement) entered into by the parties on February 19, 2007.  On May 24, 2012, Plaintiff Rio Real Estate Investment Opportunities, LLC (Developer) filed a COMPLAINT FOR BREACH OF CONTRACT, NEGLIGENT MISREPRESENTATION, FRAUD AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING (Doc. No. 1-1) (Complaint) with a copy of the Development Agreement attached to it.  Developer alleges in the Complaint that Defendant Tesla Motors, Inc. (Tesla) breached the Development Agreement (Count I), engaged in negligent misrepresentation (Count II), committed fraud (Count III), and breached the covenant of good faith and fair dealing (Count IV).

Tesla now moves under Fed. R. Civ. P. 12(b)(6) to dismiss Counts I, III, and IV for "failure to state a claim upon which relief can be granted."  *See* DEFENDANT TESLA MOTIORS [sic], INC.'S MOTION FOR PARTIAL DISMISSAL (Doc. No. 14) (Motion to

Dismiss), filed Oct. 16, 2012.  Developer opposes the Motion to Dismiss and, if the Court denies the Motion to Dismiss, Developer seeks an award of the attorney's fees and costs it incurred in responding to the Motion to Dismiss.  *See* RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT (Doc. No. 15), filed Oct. 29, 2012.  Tesla also filed DEFENDANT TESLA MOTORS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL (Doc. No. 17) on November 15, 2012.

On February 14, 2013, the Court held a hearing on the Motion to Dismiss.  Attorneys Christopher Pacheco and LeeAnn Werbelow represented Developer, and Attorneys Andrew Schultz and Nicholas Sydow represented Tesla.  Counsel agreed to strike a document entitled "Position Paper on Tesla Motors" (Doc. No. 1-1) at 16-17 which is appended to Attachment "A" of the Development Agreement.  Consequently, the Court will disregard the "Position Paper on Tesla Motors" in its consideration of the Motion to Dismiss. Mr. Pacheco also clarified that Count IV, the breach of the covenant of good faith and fair dealing claim, arises solely from the Development Agreement and is only a contract claim, not also a tort claim.  Moreover, the Court determined that it will dismiss Count III, the fraud claim, without prejudice and give Developer until March 5, 2013 to amend the Complaint, consistent with Rule 1-009(B) NMRA 1998, Fed. R. Civ. P. 9(b) and Fed. R. Civ. P. 11, to re-allege the fraud claim with sufficient particularity. Although the Court has decided to dismiss Count III without prejudice, the Court will, nonetheless, discuss the fraud claim in this MEMORANDUM OPINION AND ORDER so that the parties clearly understand the Court's reasoning in dismissing the fraud claim without prejudice.  Furthermore, the Court will consider the arguments counsel made at the February 14, 2013 at the hearing, as well as the briefs, the Complaint, and the Development Agreement, in

deciding the remainder of the Motion to Dismiss[1].

A. *Background*

    1. *The Development Agreement*

According to Developer, Tesla owns property in Bernalillo County, New Mexico known as the Cordero Mesa Business Park (Park). Complaint at ¶ 6. Developer agreed to build a 150,000 square foot facility at the Park so Tesla could manufacture electric vehicles on that property. In exchange for Developer building the facility, Tesla stated it would enter into a lease agreement with Developer for use of the facility. Additionally, Developer intended to obtain various economic incentives to benefit Tesla.

The Development Agreement "contains the principal terms with respect to the relationship between" the parties. Ex. A (Doc. No. 1-1) at 1 (attached to Complaint). The Development Agreement more specifically "establishes a relationship between Tesla and Developer whereby Tesla will conduct certain of its operations at a facility located in [the Park], in exchange for certain economic incentives that have been outlined in a separate agreement between Tesla and the State of New Mexico. . . ." *Id.* Moreover, the Development Agreement provides that "[t]he parties contemplate that successor agreements will be drafted between Developer and Tesla that reflect the following terms and effect the relationship contemplated" in the Development Agreement. *Id.* Nonetheless, the parties agreed "that unless and until such agreement is signed, this [Development] Agreement represents the spirit of the overall agreement and a good faith commitment by the parties to perform the obligations described herein." *Id.*

---

[1] In deciding a Rule 12(b)(6) Motion to Dismiss, courts "may look at the complaint, the attached exhibits and any documents incorporated into the complaint by reference that is filed with the defendant's 12(b)(6) motion." *Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc.*, 680 F.3d 1194, 1203 n.10 (10th Cir. 2011).

Those obligations include that Tesla would enter into a lease agreement with Developer to rent the 150,000 square foot facility for at least ten years with rent beginning "at $1,350,000 per year, increasing at 2% per year, based on Facility requirements provided by Tesla to Developer. . . ." *Id*. Also, "[t]he first year's lease payments will be reduced by 50% each month. This is a NNN lease where Tesla pays all expenses. The lease term begins upon certificate of occupancy." *Id*. Any changes to the facility could result in modifications to the lease terms.

Developer further agreed to "finalize an agreement with SunCal to convey, at no charge to Tesla, up to 75 acres of land which abuts the proposed site in Cordero Mesa. The conveyance of this land is contingent upon a decision by Tesla to make a significant expansion onto the site." *Id*. at 1-2. In addition, "[t]he intention of the parties is that various public entities and Developer(s) will pay for and, provide utilities and infrastructure to the site at no cost to Tesla." *Id*. at 2. As of the date of the Development Agreement, the parties had "no authority to obligate future local and state governments to any future commitments and expense." *Id*.

Next, Developer agreed to pay Tesla signing bonuses totaling $8,700,000 "conditional upon Tesla meeting certain financial requirements to be agreed upon by the parties . . . and conditional upon Bernalillo County's successful negotiation and implementation of a project participation agreement under the terms of [the Local Economic Development Act]. . . ." *Id*. The New Mexico State Legislature would contribute a total of $7,000,000 towards the signing bonuses by appropriating funds during the 2007 and 2008 legislative sessions. The Development Agreement contains a schedule for paying the signing bonuses and restricts Tesla's use of the signing bonuses to the manufacturing of electric vehicles. Moreover, the Development Agreement establishes that the signing bonuses are "contingent upon sufficient funding" from local and state entities, and that the state's contribution "will be further described in agreements

between the applicable parties. . . ." *Id*. at 3.  Finally, "[e]xecution of the signing bonus will be subject to review by Developer of Tesla's financial documents, including business plans and forecasts, as reasonably required by Developer." *Id.*

The Development Agreement also states that the Developer will provide Tesla with written statements from local or state governments "that the proposed uses by Tesla of the Facility have been approved and are consistent with any applicable development plan, zoning, or any other restrictions in use." *Id.*  Additionally, the Developer will ensure that "the site will be fully served with infrastructure" and will provide Tesla with a written statement from Bernalillo County "confirming that, to its knowledge, no additional public infrastructure or service is required to operate the Facility as contemplated by the parties." *Id*. at 4.

Furthermore, the Development Agreement provides:

> Each of the parties represent and warrant that any commitments made herein are made in good faith with the express and sincere intention to follow through as outlined herein. The State and other local governments will use their best efforts to provide any permits necessary for Tesla's intended use of the Facility and will use their best efforts to assist with approval of any applicable special needs variances.  The State and other local governments will work with Tesla to ensure that Tesla is in compliance of applicable environmental laws or regulations.

*Id*. at 3.

### 2. Counts I, III, and IV of the Complaint

Developer alleges that in 2007 it "began taking the actions necessary to complete its obligations under the Development Agreement" and that it has "otherwise satisfied its obligations under the Development Agreement."  Complaint at ¶ 12 and ¶ 14.  Developer further alleges that Tesla has "refused to enter into a lease and otherwise abandoned the Project." *Id*. at ¶ 15.  Developer asserts in its Count I breach of contract claim that Tesla's failure to enter into a lease agreement and abandonment of the Project constitutes breach of the Development

Agreement. In Count III, Developer maintains that Tesla committed fraud by "intentionally concealing [its] intent to abandon the Project after over a year of perpetual preparation. . . ." *Id*. at ¶ 32. Finally, Developer alleges in Count IV that Tesla breached the covenant of good faith and fair dealing "by purposely failing to enter into the Lease, failing to complete the Project, and abandoning the Project." *Id*. at ¶ 38.

*B. Standard of Review*

In ruling on a Rule 12(b)(6) motion to dismiss for "failure to state a claim upon which relief can be granted," the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint does not need to include detailed factual allegations, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* In other words, dismissal of a complaint under Rule 12(b)(6) is proper only where it is obvious that the plaintiff failed to set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Courts must draw on their "judicial experience and common sense" to assess a claim's plausibility. *Id*. at 679.

*C. Discussion*

    *1. Breach of Contract Claim (Count I)*

Tesla argues that Developer cannot plausibly assert that Tesla breached the Development Agreement because the Development Agreement is not an enforceable contract. To state a claim of breach of contract in New Mexico, a plaintiff "must allege: (1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach." *McCasland v. Prather*, 92 N.M. 192, 194, 585 P.2d 336, 338 (Ct. App. 1978). Tesla asserts that Developer has not plausibly shown that the Development Agreement is a valid and binding contract because the Development Agreement does not set forth the essential and material elements of a deal. Tesla further asserts that Developer does not allege in the Complaint that all of the contingencies set forth in the Development Agreement have been met and that Developer "nowhere alleges that any of the conditions or necessary actions to be completed by any of the other entities, agencies or governments were undertaken, let alone completed." Motion to Dismiss at 9.

In New Mexico, it is "the well settled rule that a contract to enter into a future contract will not be enforced unless the essential and material terms have been agreed upon." *Stites v. Yelverton*, 60 N.M. 190, 200, 289 P.2d 628, 635 (1955). Moreover, an agreement will not be enforced as a contract if the essential and material terms of the agreement are vague, indefinite, or uncertain. *Hyder v. Brenton*, 93 N.M. 378, 384, 600 P.2d 830, 836 (Ct. App.), *cert. quashed*, No. 12,620 (1979) (Walters, J., dissenting in part, concurring in part) (citation omitted). *See also* 7A Am. Jur. 2d *Contracts* § 39 (updated Nov. 2012) ("[A]n agreement to agree to do a certain specified thing is valid if all the conditions and terms of the postponed agreement are

specified."). There is authority in New Mexico to support the proposition that contingencies in an agreement together with lack of a completion time can make an agreement "so indefinite as to render it unenforceable." *See Hyder*, 93 N.M. at 384-85, 600 P.2d at 836-87 (Walters, J., dissenting in part, concurring in part). Even so, "'a written contract need not detail every term," but "essential terms must be expressly provided or necessarily implied by construction for a court to find the contract unambiguous on its face.'" *Randles v. Hanson*, 2011-NMCA-059 ¶ 32, 150 N.M. 362 (citation omitted). In other words, contract terms must be reasonably certain. *Padilla v. RRA, Inc.,* 1997-NMCA-104 ¶ 8, 124 N.M. 111. Contract terms are reasonably certain "'if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.'" *Id.* (citation omitted).

Having examined the Development Agreement in the light most favorable to Developer, the Court finds that it lacks many essential and material terms. Although the lease terms appear rather specific, the Development Agreement does not specify (1) a time frame for completing the commitments described in the Development Agreement, (2) who will build the facility, (3) the cost of building the facility, (4) the method of financing the entire project, (5) when construction of the facility would begin and end, (6) what would happen if the legislative appropriations were not passed, and (7) performance benchmarks. Additionally, several material and essential terms are simply left to future negotiations.

Many of the terms of the Development Agreement are also unduly vague or indefinite, i.e., not reasonably certain, because they involve contingencies, additional tasks to be performed by third parties, and unresolved negotiations. Developer argues, however, that contingencies in an agreement do not limit a contract's enforceability. Developer cites to *Republic Nat. Life Ins. Co. v. Red Lion Homes, Inc.*, 704 F.2d 484 (10th Cir. 1983), a case wherein the Tenth Circuit

Court of Appeals specifically relied on two Colorado cases which held that "when [a] contract is contingent on obtaining additional financing, purchaser must make reasonable efforts to secure it." *Id*. at 486.  However, in New Mexico, the Honorable New Mexico Court of Appeals Judge Mary Walters, in an opinion dissenting in part and concurring in part with the majority of the New Mexico Court of Appeals, discussed an agreement in which property was conveyed with the limitation that the property have a home built on it.  Two contingencies were expressed prior to construction of the home: (1) construction could not start until the spring; and (2) construction of the home was contingent on the sale of the purchaser's home.  Judge Walters concluded that these "contingencies, together with the fact that no time for completion of the project was ever decided upon, or even discussed, make [purchaser's] 'promise' to build so indefinite as to render it unenforceable." *Hyder*, 93 N.M. at 384-85, 600 P.2d at 836-37.  Judge Walter's opinion demonstrates that in New Mexico contingencies can indicate an indefinite agreement and thus an unenforceable contract.

Moreover, generally, "the question is whether the indefinite promise is so essential to the bargain that inability to enforce that promise strictly according to its terms makes it also unfair to enforce the remainder of the agreement.  The more important the subject matter to be agreed upon, the more likely it is that the uncertainty will prevent or hinder enforcement." Richard A. Lord, 1 *Williston on Contracts* § 4:31 (4th ed.) (updated May 2012).  In other words, "if the undetermined matter does not preclude performance of the remainder of the contract and is of comparatively little importance, the uncertain promise may be left entirely unperformed and the remainder of the contract enforced." *Id*.  In this case, viewing the Development Agreement in the light most favorable to Developer, the Court concludes that the contingent provisions of the Development Agreement, like the contingencies in *Hyder*, are not minor or fairly unimportant

9

provisions. Tesla would need for these contingencies to be met before it could occupy and lease the Developer's facility and begin manufacturing electric vehicles. Put another way, the contingencies are so essential to the deal that it would be unfair to enforce the remainder of the Development Agreement without the contingencies having been met first.

Developer also argues that the questions of whether a contract exists and whether the contingencies have actually been met are fact questions for a jury to determine. In deciding a Rule 12(b)(6) motion to dismiss, the Court is only obligated to examine the Complaint and the attached Development Agreement to determine if Developer has alleged a plausible breach of contract claim. To state a plausible breach of contract, Developer must show that, on its face, the Development Agreement is a valid and binding contract. Only after Developer has plausibly demonstrated that the Development Agreement is a valid and binding contract, does the Court need to address whether Developer has plausibly alleged that it has performed its obligations under the Development Agreement. Since the Court believes that Developer has not plausibly demonstrated that the Development Agreement is a valid and binding contract, the Court need not decide if Developer has plausibly alleged that it has fulfilled its obligations under the Development Agreement. In sum, the Court cannot draw a reasonable inference from the Complaint and the Development Agreement that Tesla is liable for breach of contract. At most, the Development Agreement is an unenforceable agreement to agree. Hence, the breach of contract claim is subject to dismissal with prejudice under Rule 12(b)(6).

*2. Breach of the Covenant of Good Faith and Fair Dealing (Count IV)*

If there is no enforceable contract, one cannot bring a claim for breach of the covenant of good faith and fair dealing sounding in contract law. *See, e.g., Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 317 (9th Cir.), *cert. denied*, 519 U.S. 865 (1996). Because Developer has not

stated a plausible breach of contract claim, Developer cannot state a plausible claim for breach of the covenant of good faith and fair dealing.  That claim is, therefore, subject to dismissal with prejudice under Rule 12(b)(6).

       3.  *Fraud (Count III)*

Tesla argues that the fraud claim should be dismissed under Rule 12(b)(6) because Developer has not pled that claim with the required particularity.  Rule 1-009(B) states:  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge and other condition of mind of a person may be averred generally."  Rule 1-009(B) is similar to Fed. R. Civ. P. 9(b) which also requires "particularity" in stating a claim of fraud.  In New Mexico, "[a] pleading of fraud is sufficient if the facts alleged are facts from which fraud will necessarily be implied; in addition, the allegations should leave no doubt in defendants' minds as to the claim asserted."  *Delgado v. Costello*, 91 N.M. 732, 734, 580 P.2d 500, 502 (Ct. App. 1978).  The federal courts have explained that "an allegation of fraud must 'set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"  *Midgley v. Rayrock Mines, Inc.*, 374 F.Supp.2d 1039, 1047 (D.N.M. 2005) (quoting *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997)).  Although "[R]ule 9(b) does not require specific knowledge regarding the defendant's state of mind," like Rule 1-009(B), speculative and conclusory allegations of fraud will not suffice.  *See id*.

Here, Developer makes only a bare-bones allegation of fraud in the Complaint at ¶ 32: "The actions of Defendant in intentionally concealing their intent to abandon the Project after over a year of perpetual preparation constitutes fraud."  Developer does not allege specific times, places, actions, or even identities of the persons who allegedly committed the fraud.  Without

11

those allegations, the Court cannot determine that Developer has stated a plausible fraud claim. Consequently, the fraud claim should be dismissed without prejudice at this time under Rule 12(b)(6). Nevertheless, the Court will give Developer until March 5, 2013 to amend the Complaint, if Developer can do so consistent with Rule 1-009(B) NMRA 1998, Fed. R. Civ. 9(b) and Fed. R. Civ. P. 11, to re-allege the fraud claim with sufficient particularity.

*4. Developer's Request for an Award of Attorney's Fees and Costs*

Since the Court will grant Tesla's Motion to Dismiss, the Court will deny Developer's request for an award of the attorney's fees and costs it incurred in responding to the Motion to Dismiss.

IT IS ORDERED that:

1. DEFENDANT TESLA MOTIORS [sic], INC.'S MOTION FOR PARTIAL DISMISSAL (Doc. No. 14) is granted;

2. Counts I and IV will be dismissed with prejudice;

3. Count III will be dismissed without prejudice;

4. Developer has until March 5, 2013 to amend the Complaint, if it can do so consistent with Rule 1-009(B) NMRA 1998, Fed. R. Civ. P. 9(b) and Fed. R. Civ. P. 11, to re-allege the fraud claim with sufficient particularity; and

5. Developer's request for an award of attorney's fees and costs is denied

_____
SENIOR UNITED STATES DISTRICT COURT JUDGE